**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

JOHNNY MONROE HARMON,          )
                               )
                Plaintiff,     )
                               )
        v.                     )          1:17CV417
                               )
NANCY A. BERRYHILL,            )
Acting Commissioner of Social  )
Security,                      )
                               )
                Defendant.     )


**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Johnny Monroe Harmon, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 2.) Defendant has filed the certified administrative record (Docket Entry 8 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 10, 12; see also Docket Entry 11 (Plaintiff's Brief); Docket Entry 13 (Defendant's Memorandum); Docket Entry 14 (Plaintiff's Response)). For the reasons that follow, the Court should enter judgment for Defendant.

**I. PROCEDURAL HISTORY**

Plaintiff applied for DIB, alleging an onset date of March 1, 2010. (Tr. 75, 139-40.) Upon denial of that application initially (Tr. 56-63, 78-86) and on reconsideration (Tr. 64-72, 87-93),

Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 94-95). Plaintiff, his non-attorney representative, and a vocational expert ("VE") attended the hearing. (Tr. 31-55.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 16-27.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 14-15, 204-05), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2016.

2. [Plaintiff] has not engaged in substantial gainful activity since March 1, 2010, the alleged onset date.

. . .

3. [Plaintiff] had the following severe impairment: degenerative disc disease of the lumbar spine.

. . .

4. Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [Plaintiff] had the residual functional capacity to perform a range of medium work . . . except that he is limited to no more than frequent stooping, kneeling, crouching, [and] crawling.

. . .

6.   [Plaintiff] is capable of performing past relevant work as a laborer, poultry farm.  This work does not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity.

. . .

In the alternative, considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that [Plaintiff] can also perform.

. . .

7.   [Plaintiff] has not been under a disability, as defined in the . . . Act, from March 1, 2010, through the date of this decision.

(Tr. 21-27 (bold font and internal parenthetical citations omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits."  Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited."  Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).  Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo."  Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through

application of the correct legal standard." <u>Hines</u>, 453 F.3d at 561
(internal brackets and quotation marks omitted). "Substantial
evidence means 'such relevant evidence as a reasonable mind might
accept as adequate to support a conclusion.'" <u>Hunter v. Sullivan</u>,
993 F.2d 31, 34 (4th Cir. 1992) (quoting <u>Richardson v. Perales</u>, 402
U.S. 389, 401 (1971)). "It consists of more than a mere scintilla
of evidence but may be somewhat less than a preponderance." <u>Mastro
v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal
quotation marks omitted). "If there is evidence to justify a
refusal to direct a verdict were the case before a jury, then there
is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal
quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not
undertake to re-weigh conflicting evidence, make credibility
determinations, or substitute its judgment for that of the [ALJ, as
adopted by the Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (internal
brackets and quotation marks omitted). "Where conflicting evidence
allows reasonable minds to differ as to whether a claimant is
disabled, the responsibility for that decision falls on the
[Commissioner] (or the ALJ)." <u>Id.</u> at 179 (internal quotation marks
omitted). "The issue before [the Court], therefore, is not whether
[the claimant] is disabled, but whether the ALJ's finding that [the
claimant] is not disabled is supported by substantial evidence and

was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration ["SSA"] has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial

---

[1] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . .
(continued...)

whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

## B. Assignments of Error

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

_____

[3] (...continued)
[which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[4] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

1) "[t]he ALJ failed to properly analyze the opinions of the [SSA's] own examining specialist (neurology), Dr. [James] Nelson, consistent with the regulations and Fourth Circuit precedent" (Docket Entry 11 at 5 (single-spacing, bold font, and underlining omitted); see also Docket Entry 14 at 1-7); and

2) "[t]he ALJ's credibility assessment is generally deficient because of the ALJ's errors [in evaluating Dr. Nelson's opinions], but also for [the ALJ's] failure to acknowledge or discuss Plaintiff's exemplary (39 consecutive year) work history" (Docket Entry 11 at 19 (single-spacing, bold font, and underlining omitted); see also Docket Entry 14 at 7-8).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 13 at 4-22.)

## 1. Analysis of Dr. Nelson's Opinions

In Plaintiff's first issue on review, he contends that "[t]he ALJ failed to properly analyze the opinions of the [SSA's] own examining specialist (neurology), Dr. Nelson, consistent with the regulations and Fourth Circuit precedent." (Docket Entry 11 at 5 (single-spacing, bold font, and underlining omitted).) More specifically, Plaintiff asserts that the ALJ failed to "acknowledge or discuss" the facts that Dr. Nelson constituted both an examining source and a specialist, which should have "weigh[ed] very heavily in favor of giving the opinion great weight." (Id. at 11-12 (italics omitted) (citing Tr. 24, and 20 C.F.R. §§ 404.1527(c)(1),

(5)); see also Docket Entry 14 at 2.) Moreover, according to Plaintiff, "[t]he ALJ failed to provide good/specific/supported reasons for rejecting Dr. Nelson's opinions." (Docket Entry 11 at 11 (single-spacing, bold font, and underlining omitted) (citing Tr. 24).) Plaintiff maintains that, "[i]f the ALJ was dissatisfied with Dr. Nelson's assessments, [the ALJ] had numerous options to develop the record, not one of which was to set her opinion against [Dr. Nelson's]." (Id. at 17 (italics omitted).) Plaintiff deems the ALJ's errors in this regard prejudicial, given that the "Medical-Vocational Guidelines (or 'Grid[s] . . .') direct a finding of 'disabled' even if Dr. Nelson's opinion is interpreted as limiting Plaintiff to light exertion level work." (Id. at 10 (citing 20 C.F.R., Pt. 404, Subpt. P, App'x 2, § 202.01); see also Docket Entry 14 at 1.)[5] Plaintiff's contentions miss the mark.

Consultative examiners such as Dr. Nelson do not constitute treating sources under the regulations, see 20 C.F.R. § 404.1527(c)(2), and thus their opinions, as a general proposition, do not warrant controlling weight, Turberville v. Colvin, No. 1:11CV262, 2014 WL 1671582, at *6 (M.D.N.C. Apr. 23,

---

[5] "The Grids categorize jobs by their physical-exertion requirements, namely, sedentary, light, medium, heavy, and very heavy. There are numbered tables for the sedentary, light, and medium level (tables 1, 2, and 3, respectively), and a specific rule for the heavy and very heavy levels. Based on the claimant's RFC, the ALJ must first determine which table to apply, i.e., if the claimant's RFC limits h[er] to a sedentary exertional level, then Table No. 1 is the appropriate table. Next, based on the claimant's age, education, and previous work experience, the [table or] rule directs a finding of 'disabled' or 'not disabled.'" Black v. Astrue, No. 3:09CV599, 2010 WL 2306130, at *4 (E.D. Va. Apr. 26, 2010) (unpublished) (internal citations and footnotes omitted), recommendation adopted, 2010 WL 2306136 (E.D. Va. June 3, 2010) (unpublished).

2014) (unpublished) (Auld, M.J.), <u>recommendation adopted</u>, slip op. (M.D.N.C. May 15, 2014) (Eagles, J.).  However, the ALJ must nevertheless evaluate consultative opinions using the factors outlined in the regulations, and expressly indicate and explain the weight he or she affords to such opinions.  <u>See</u> 20 C.F.R. § 404.1527(c) ("<u>Regardless of its source</u>, [the ALJ] <u>will</u> evaluate <u>every</u> medical opinion [he or she] receive[s]" and where an opinion does not warrant controlling weight, the ALJ must "<u>consider</u> all of the . . . factors [in 20 C.F.R. § 404.1527(c)(1)-(6)] in deciding the weight [to] give to <u>any</u> medical opinion." (emphasis added)).

Dr. Nelson first evaluated Plaintiff on October 11, 2013, for complaints of back pain, knee pain, and wrist pain.  (<u>See</u> Tr. 210-13.)  Plaintiff reported to Dr. Nelson that pain limited Plaintiff to one hour of sitting, 30 minutes of standing, minimal walking, and lifting of three to five pounds.  (<u>See</u> Tr. 210.)  Dr. Nelson conducted a comprehensive physical examination, which resulted in largely normal findings, including symmetric pulses and reflexes, normal gait, no muscle spasm, 5/5 strength including grip strength, no joint swelling, erythema, effusion, or deformity, and negative straight leg raising tests bilaterally.  (<u>See</u> Tr. 210-11.)  Dr. Nelson detected decreased sensation in Plaintiff's thumbs, found some tenderness in Plaintiff's wrists and knees, noted Plaintiff had some difficulty rising from a squatting position, and recorded decreased range of motion in Plaintiff's thumbs and lumbar spine.

(See Tr. 211-12.) X-rays of Plaintiff's lumbar spine revealed 50 percent narrowing of the L4-5 joint space, but x-rays of Plaintiff's knees reflected no abnormality. (See Tr. 213.) Dr. Nelson concluded that Plaintiff "exhibit[ed] moderate physical limitations due to lumbar back pain, bilateral knee pain, [and] bilateral wrist pain . . . [and] d[id] not exhibit any environmental restrictions based on [the] examination." (Id. (emphasis added).)

During the hearing, the ALJ noted that the record did not contain much medical treatment (see Tr. 40) and, as a result, ordered a second consultative examination (see Tr. 42), which Dr. Nelson conducted on February 5, 2016 (see Tr. 219-27). Dr. Nelson's second consultative examination yielded benign physical findings similar to his first examination, including 5/5 strength, normal gait, no muscle spasm, no joint swelling, erythema, effusion, tenderness, or deformity, negative straight leg tests bilaterally, and symmetric pulses and reflexes. (See Tr. 222-24.) In addition, Dr. Nelson's second examination noted some improvements as compared to the first examination, such as normal sensation, an ability to squat and rise with ease, and full range of motion in all joints except for a decrease in forward flexion and extension of the lumbar spine. (Compare Tr. 211-12, with Tr. 224-26.) Dr. Nelson noted that Plaintiff could pinch, grasp, and manipulate objects with "slight difficulty." (Tr. 226 (emphasis

added).)  Although Dr. Nelson stated that Plaintiff "[wa]s able to walk up to one mile, stand up to 20 minutes and lift up to 10 [pounds]" (Tr. 227), that statement appears in a paragraph containing many of Plaintiff's subjective complaints and, thus, the examination report does not clarify if Dr. Nelson based that statement on the examination's physical findings or on Plaintiff's subjective complaints.  Dr. Nelson repeated his conclusion from the first examination that Plaintiff "exhibit[ed] moderate physical limitations due to lumbar back pain, bilateral knee pain, [and] bilateral wrist pain . . . [and] d[id] not exhibit any environmental restrictions based on [the] examination."  (Id. (emphasis added).)

Dated the same day as the second examination, Dr. Nelson also completed a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" ("MSS") (see Tr. 229-34), opining that (over the course of a standard eight-hour work-day) Plaintiff could occasionally lift and carry up to ten pounds (see Tr. 229), sit for two hours at one time and for three hours and 30 minutes total, stand for 20 minutes at one time and for 30 minutes total, and walk for 15 minutes at a time and for one hour total, and needed to lie down for the remaining three hours (see Tr. 230).  Dr. Nelson further stated that Plaintiff could never push or pull, could occasionally reach, handle, finger, feel, and use foot controls (see Tr. 231), could never climb ladders or scaffolds, stoop, or

12

crawl, and could occasionally climb stairs and ramps, balance, kneel, and crouch. (See Tr. 232.) Lastly, Dr. Nelson indicated that Plaintiff could never tolerate exposure to unprotected heights, moving mechanical parts, pulmonary irritants, and extreme temperatures, and could only handle occasional exposure to operating a motor vehicle, humidity/wetness, and vibrations. (See Tr. 233.)

The ALJ discussed Dr. Nelson's findings at the first and second consultative examinations in a fair amount of detail (see Tr. 23-24), and then evaluated and weighed Dr. Nelson's opinions on the MSS as follows:

> As for the opinion evidence, Dr. Nelson opined that [Plaintiff] is able to walk up to one mile, stand up to 20 minutes, and lift up to 10 pounds. Dr. Nelson further opined [Plaintiff] has postural, handling, fingering, and environmental limitations. I afford Dr. Nelson's opinion little weight as his opinion appears to rely heavily on [Plaintiff's] subjective allegations and because it is inconsistent with his findings upon examination. [Plaintiff's] condition had remained generally unremarkable and unchanged from 2013 to 2016. Although he demonstrated some reduction in back extension, he showed improvement in his range of motion with regard to lateral flexion, rotation, and forward flexion. [Plaintiff] demonstrated no difficulty with sitting, standing, or walking, and could even hop on one foot bilaterally. Furthermore, [Plaintiff] reported he takes only over the counter medication as needed.

(Tr. 24 (internal citations omitted).)

Plaintiff first faults the ALJ for failing to "acknowledge or discuss" the facts that Dr. Nelson constituted both an examining source and a specialist, which should have "weigh[ed] very heavily

in favor of giving the opinion great weight." (Docket Entry 11 at 11-12 (italics omitted) (citing Tr. 24, and 20 C.F.R. §§ 404.1527(c)(1), (5)); see also Docket Entry 14 at 2.) That argument lacks merit. The ALJ clearly recognized that Dr. Nelson constituted an examining source, as the ALJ ordered the February 5, 2016, consultative examination herself (see Tr. 42), and discussed Dr. Nelson's findings arising from both consultative examinations in some detail (see Tr. 23-24).

Although the ALJ did not expressly discuss Dr. Nelson's speciality as a neurologist in the decision (see Tr. 23-24), as the Commissioner argues (see Docket Entry 13 at 15), the regulations require the ALJ to consider the factors listed in 20 C.F.R. § 404.1527(c)(1) through (6), but do not mandate that the ALJ discuss each factor in the decision, see Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) ("That the ALJ did not explicitly discuss all the § 404.1527([c]) factors for each of the medical opinions before him does not prevent this court from according his decision meaningful review. [The plaintiff] cites no law, and we have found none, requiring an ALJ's decision to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion."); Todd v. Berryhill, No. 7:15-CV-00258-RJ, 2017 WL 1051113, at *3 (E.D.N.C. Mar. 20, 2017) (unpublished) ("The ALJ is not required . . . to discuss all of the[ Section 1527(c)] factors."). As explained in more detail below, despite the ALJ's

failure to expressly discuss Dr. Nelson's area of speciality, the Court can still meaningfully review the ALJ's decision to afford Dr. Nelson's opinions "little weight" (Tr. 24).

Next, Plaintiff asserts that "[t]he ALJ failed to provide good/specific/supported reasons for rejecting Dr. Nelson's opinions." (Docket Entry 11 at 11 (single-spacing, bold font, and underlining omitted) (citing Tr. 24).) In particular, Plaintiff maintains that the ALJ's decision to discount Dr. Nelson's opinions because such opinions "appear[ed] to rely heavily on [Plaintiff's] subjective allegations" (Tr. 24) constitutes "pure[] speculati[on]" (Docket Entry 11 at 12; see also Docket Entry 14 at 5-6). According to Plaintiff, the ALJ "never explained how she arrived at this conclusion; nor is there . . . [any] independent basis in th[e] record to assume that Dr. Nelson was not able to sort through the subjective and objective evidence before arriving at his conclusions[.]" (Docket Entry 11 at 12-13 (quoting Ryan v. Commissioner of Soc. Sec., 528 F.3d 1194, 1200 (9th Cir. 2008) ("[It is] improper for an ALJ to reject the findings of [a consultative examiner] on the ground that they are based on a claimant's subjective complaints where, as here, there is nothing in the record to suggest that [the examiner] relied more on the claimant's subjective complaints than on his or her own clinical observations in determining the nature of the claimant's functional abilities and limitations.").)

As an initial matter, Dr. Nelson supplied his MSS on a check-box form, and did not complete _any_ of the sections of that form that requested that he "[i]dentify the particular medical or clinical findings (i.e., physical exam findings, x-ray findings, laboratory test results, history, and symptoms, including pain, etc.) which support [his] assessment or any limitations and why the findings support the assessment." (Tr. 229; see also Tr. 230, 231, 232, 233.) The MSS form expressly cautions, in bold font, that "**[i]t is important that you relate particular medical or clinical findings to any assessed limitations in capacity: [t]he usefulness of your assessment depends on the extent to which you do this.**" (Tr. 229.) Moreover, although Dr. Nelson, on both examinations, found Plaintiff's impairments caused only "moderate physical limitations" and _no_ "environmental restrictions based on [the] examination" (Tr. 213, 227 (emphasis added)), he included both extreme physical limitations and multiple environmental restrictions on the MSS (see Tr. 229-33). Thus, unlike in Ryan, "the [administrative] record [here] suggest[s] that [Dr. Nelson] relied more on [Plaintiff's] subjective complaints than on his . . . own clinical observations in determining the nature of [Plaintiff's] functional abilities and limitations." Ryan, 528 F.3d at 1200.

Plaintiff also challenges "the ALJ's statement that Dr. Nelson's opinions were inconsistent with his examination findings

because Plaintiff used . . . over-the-counter medications and was able to lift, carry and handle light objects, arise from a sitting position, and walk on his heels and toes with a normal gait." (Docket Entry 11 at 13 (citing Tr. 24) (footnote and internal quotation marks omitted).) According to Plaintiff, Dr. Nelson "explicitly referred to Plaintiff's limited range of motion as supporting [Dr. Nelson's] conclusion that Plaintiff was limited in his ability to work by his pain" (id. (citing Tr. 225-27); see also Docket Entry 14 at 2), and the "ALJ [wa]s not free to pick and choose between positive and negative findings, and arrive[] at h[er] own lay conclusion" (Docket Entry 11 at 14; see also Docket Entry 14 at 2).

Plaintiff distorts the ALJ's analysis by claiming that the ALJ found Dr. Nelson's opinions inconsistent with this examination findings "because Plaintiff used . . . over-the-counter medications and was able to lift, carry and handle light objects, arise from a sitting position, and walk on his heels and toes with a normal gait." (Docket Entry 11 at 13 (citing Tr. 24) (footnote and internal quotation marks omitted).) The ALJ actually provided the following reasoning:

> [Plaintiff's] condition had remained generally unremarkable and unchanged from 2013 to 2016. Although he demonstrated some reduction in back extension, he showed improvement in his range of motion with regard to lateral flexion, rotation, and forward flexion. [Plaintiff] demonstrated no difficulty with sitting, standing, or walking, and could even hop on one foot

> bilaterally. Furthermore, [Plaintiff] reported he takes
> only over the counter medication as needed.

(Tr. 24 (emphasis added)). Thus, contrary to Plaintiff's argument (see Docket Entry 11 at 13-14; see also Docket Entry 14 at 2), the ALJ expressly acknowledged that Plaintiff "demonstrated some reduction in back extension" (Tr. 24) and, thus, did not "pick and choose between positive and negative findings" to support her decision to discount Dr. Nelson's findings. Moreover, Plaintiff conceded the "'normal' aspects of Dr. Nelson's examination" (Docket Entry 11 at 13; see also Docket Entry 14 at 2), but pointed to a single reference to a "reduction in back mobility" in one of Dr. Nelson's two lengthy reports as supportive of Dr. Nelson's extreme functional limitations (Docket Entry 11 at 13 (citing Tr. 225-27); see also Docket Entry 14 at 2 (citing Tr. 225-27)), thus, himself engaging in the very "pick[ing] and choos[ing]" for which he condemns the ALJ (Docket Entry 11 at 13-14; see also Docket Entry 14 at 2).

Further, Plaintiff contends that the ALJ's analysis "ignore[d] . . . that . . . Dr. Nelson[] . . . evaluate[d] the impact of Plaintiff's impairments on his ability to work on a regular and continuous basis." (Docket Entry 11 at 14.) According to Plaintiff, "[i]t is simply common sense that impairments of the type demonstrated in this case are aggravated by activities in excess of a person's limitations; in other words, if one does not lift anything heavy, or stand or walk very much, it is not unusual

at all for someone with back or knee problems to experience less symptoms and/or to need nothing more than an over-the-counter medication to manage pain." (Id.)

Boiled down to its essence, Plaintiff's argument amounts to an expression of his disagreement with the ALJ's conclusion that Plaintiff remains capable of performing a limited range of medium work. Plaintiff presents no evidence in support of his assertion that the ALJ "ignore[d]. . . that . . . Dr. Nelson[] . . . evaluate[d] the impact of Plaintiff's impairments on his ability to work on a regular and continuous basis." (Id.) The ALJ ordered the post-hearing consultative examination that Dr. Nelson conducted on February 5, 2016 (see Tr. 42), and provided Dr. Nelson with the SSA's MSS form, which instructed Dr. Nelson "[t]o determine [Plaintiff's] ability to do **work-related activities on a regular and continuous basis**" (Tr. 229 (emphasis in original)); see also Social Security Ruling 96-8p, Policy Interpretation Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *1 (July 2, 1996) ("RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." ("SSR 96-8p") (emphasis added)). Under such circumstances, Plaintiff has not shown that the ALJ disregarded that Dr. Nelson's MSS opinions

19

addressed Plaintiff's ability to perform work-related activities on a regular and continuing basis.

Next, Plaintiff maintains that the ALJ failed to evaluate Dr. Nelson's opinions for consistency with the administrative record as a whole. (Docket Entry 11 at 16 (citing 20 C.F.R. § 404.1527(c)(4)).) However, Plaintiff does not indicate how such an evaluation could have resulted in a different outcome in his case. See generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires [a court] to remand a case in quest of a perfect opinion [by an ALJ] unless there is reason to believe that the remand might lead to a different result"). The only other medical opinion evidence in the administrative record consists of the state agency consultants' RFC opinions at the initial and reconsideration stages of review. (See Tr. 56-62, 64-71.) Both consultants found that Plaintiff remained capable of a full range of medium work (see Tr. 60, 69), which harmonizes with the ALJ's RFC (see Tr. 22) (with the exception of additional postural restrictions, which the ALJ expressly noted (see Tr. 24)), and sharply conflicts with Dr. Nelson's opinions on the MSS (see Tr. 229-34). The only other evidence in the administrative record consists of Plaintiff's subjective statements concerning his limitations (see Tr. 38-42, 44, 46, 47), which the ALJ found "not entirely consistent with the evidence" (Tr. 24). For the reasons

described in more detail below, the ALJ supported her analysis of Plaintiff's subjective complaints with substantial evidence. Thus, Plaintiff has not shown prejudicial error with respect to the ALJ's failure to explicitly compare the opinions on Dr. Nelson's MSS with the record as a whole.

Plaintiff additionally asserts that "[t]he ALJ's rejection of Dr. Nelson's opinion[s] also ignores the ALJ's motivation in obtaining the examination in the first place . . .: the [SSA] explicitly provides that consultative examinations . . . are purchased [']to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the SSA] to make a determination or decision on [a] claim.'" (Docket Entry 11 at 15 (quoting 20 C.F.R. 404.1519a(b)).) According to Plaintiff, "[i]t defies reasonableness and logic to state, on one hand, that the [SSA] required Dr. Nelson to perform such an examination twice . . . because the record was insufficient to make a determination and then, on the other, to reject his report because of the incompleteness or insufficiency of the record that required the examination in the first place." (Id. (second emphasis added).) Plaintiff contends that, "[i]f ALJ was dissatisfied with Dr. Nelson's assessments, she had numerous options to develop the record, not one of which was to set her opinion against his." (Id. at 17 (italics omitted).) In that regard, Plaintiff maintains that the ALJ "could have enlisted a review of the record and testimony

by a medical expert, recontacted Dr. Nelson for clarification of his opinions or, for that matter, scheduled a consultative examination with a different physician, requested additional testing, and/or return[ed] the entire, expanded case record to the State Agency for an updated review of the record by a medical consultant." (Id. at 17-18 (citing Social Security Ruling 12-2p, Titles II and XVI: Evaluation of Fibromyalgia, 2012 WL 3104869, at *4 & nn.15 & 16 (2012), 20 C.F.R. § 404.1520b(c)(1), and Hearings, Appeals, and Litigation Law Manual (HALLEX), § I-2-5-34).)

Plaintiff's argument conflates the rejection of an examining source's opinion as unsupported by that source's own examination findings, and rejection of that opinion as incomplete or insufficient. (See id. at 15, 17-18.) Here, the ALJ discounted Dr. Nelson's opinions because they (1) relied too heavily on Plaintiff's subjective complaints; and (2) lacked the support of Dr. Nelson's own examination findings. (See Tr. 24.) The ALJ did not find, at any point in her decision, that Dr. Nelson's second consultative examination (or the administrative record as a whole) qualified as incomplete or insufficient and, thus, no obligation arose on the ALJ's part to take any of the actions suggested by Plaintiff to clarify or further develop the record.

In sum, Plaintiff's first assignment of error fails as a matter of law.

## 2. Evaluation of Subjective Complaints

Lastly, Plaintiff asserts that "[t]he ALJ's credibility assessment is generally deficient because of the ALJ's . . . failure to acknowledge or discuss Plaintiff's exemplary (39 consecutive year) work history." (Docket Entry 11 at 19 (single-spacing, bold font, and underlining omitted); see also Docket Entry 14 at 7-8.) In particular, Plaintiff notes that his "work history dat[es] back to 1972, since he was 16 years old, resulting in 156 consecutive quarters of covered earnings" (Docket Entry 11 at 19 (citing Tr. 144-45)), and that he "performed his most recent work as a poultry farm laborer, despite significant pain his back, hands, and knees, up until he was laid off (id. (citing Tr. 39)). According to Plaintiff, SSA policy "requires consideration of 'evidence from attempts to work' as part of the RFC assessment" (id. at 19-20 (citing 20 C.F.R. § 404.1529(c)(3), SSR 96-8p, 1996 WL 374184, at *5, and Social Security Ruling 96-7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186, at *5 (July 2, 1996) ("SSR 96-7p"))), and "[c]ase law has long recognized the regulatory and rational basis for this requirement, finding that it is unlikely someone would trade in their productive, and lucrative, work career for the far less lucrative 'career' of receiving disability benefits, and requiring the [SSA] to consider this patently credibility-enhancing

factor" (id. at 20 (citing, inter alia, Newton v. Apfel, 209 F.3d 448, 455 n.3 (5th Cir. 2000), Taybron v. Harris, 667 F.2d 412 (3d Cir. 1981), Allen v. Califano, 613 F.2d 139, 147 (6th Cir. 1980), and Moncus v. Colvin, No. 7:12-CV-76-BO, 2013 WL 4854518, at *3 (E.D.N.C. Sept. 11, 2013) (unpublished))).[6]  The Court should not grant Plaintiff relief arising out of Plaintiff's second assignment of error.

This Court (via United States Magistrate Judge Joe L. Webster) recently addressed a similar argument, raised by Plaintiff's same counsel in a different case, as follows:

> [T]o the extent that Plaintiff contends that the ALJ materially erred by not considering her work history, Plaintiff is incorrect.  A claimant's prior work record is relevant to a credibility analysis, but is only one factor among many.  See 20 C.F.R. § 404.1529(c)(3) (requiring ALJ to consider "information about [a claimant's] prior work record" in assessing credibility).  Thus, "while a long work history may be a factor supporting credibility, it is not controlling."  Maner v. Colvin, No. CA 1:12-2969-RBH, 2014 WL 4656383, at *5 (D.S.C. Sept. 17, 2014) (unpublished); see also Wavercak v. Astrue, 420 F. App'x 91, 94 (2d Cir. 2011) ("That [the claimant's] good work history was not specifically

---

[6] Applicable to ALJ decisions on or after March 28, 2016, the SSA superceded SSR 96-7p with Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, at *5 (Oct. 25, 2017) ("SSR 16-3p").  The new ruling "eliminat[es] the use of the term 'credibility' from . . . sub-regulatory policy, as [the] regulations do not use this term."  Id. at *1.  The ruling "clarif[ies] that subjective symptom evaluation is not an examination of the individual's character," id., and "offer[s] additional guidance to [ALJs] on regulatory implementation problems that have been identified since [the publishing of] SSR 96-7p," id. at *1 n.1.  Although the ALJ's decision in this case post-dates the effective date of SSR 16-3p (see Tr. 27), the ALJ cited to SSR 96-7p rather than SSR 16-3p in her recitation of the standards for evaluating a claimant's subjective complaints (see Tr. 23).  However, the ALJ's citation of the rescinded SSR amounts to harmless error, as the ALJ's analysis conformed with SSR 16-3p in that it did not utilize the term "credibility," but rather properly considered whether Plaintiff's statements held consistency with the evidence of record.  (See Tr. 24.)

> referenced in the ALJ's decision does not undermine the credibility assessment, given the [other] substantial evidence . . . .").
>
> Here, the ALJ discussed Plaintiff's work history in detail during the administrative hearing, and in connection with her finding that Plaintiff could perform her past relevant work. The ALJ also indicated that she considered the entire record in assessing Plaintiff's RFC. Moreover, as discussed above, the ALJ here also considered significant additional evidence relevant to a credibility analysis. Consequently, any error here is, at most, harmless. Plaintiff has failed to demonstrate any material error in the ALJ's credibility analysis.

Neely v. Colvin, No. 1:15CV983, 2017 WL 120931, at *10 (M.D.N.C. Jan. 12, 2017) (unpublished) (Webster, M.J.) (internal transcript citations omitted), recommendation adopted, slip op. (M.D.N.C. Feb. 17, 2017) (Osteen, Jr., C.J.).

Here, just like in Neely, the ALJ "discussed Plaintiff's work history in detail during the administrative hearing," Neely, 2017 WL 120931, at *10. (See Tr. 35-39, 43.) Further, as in Neely, the ALJ mentioned Plaintiff's work history again "in connection with her finding that Plaintiff could perform h[is] past relevant work . . . [and] also indicated that she considered the entire record in assessing Plaintiff's RFC," Neely, 2017 WL 120931, at *10. (See Tr. 22, 25.) Moreover, the ALJ "also considered significant additional evidence," Neely, 2017 WL 120931, at *10, in connection with her analysis of Plaintiff's subjective complaints, including the following:

- Plaintiff "stopped working for a non-medical reason."

- Plaintiff "has not participated in any medical treatment following his alleged onset date, nor has he taken anything more than over the counter medications for [his] symptoms."

- Plaintiff "testified he performs all his household chores, such vacuum, sweep, wash dishes, cook, and wash clothes, with breaks."

(Tr. 24). Thus, "[g]iven that the ALJ relied on multiple permissible factors in reaching the decision to discount Plaintiff's [subjective complaints], any failure by the ALJ to expressly discuss Plaintiff's work history amounts to harmless error." Propst v. Colvin, 1:16CV00082, 2016 WL 5107093, at *8 (M.D.N.C. Sept. 20, 2016) (unpublished) (Auld, M.J.), recommendation adopted, slip op. (M.D.N.C. Oct. 31, 2016) (Biggs, J.); accord Wavercak, 420 F. App'x at 94 ("That [the claimant's] good work history was not specifically referenced in the ALJ's decision does not undermine the credibility assessment, given the substantial evidence supporting the ALJ's determination."); see also Fisher, 869 F.2d at 1057 (observing that "[n]o principle of administrative law or common sense requires [a court] to remand a case in quest of a perfect opinion [by an ALJ] unless there is reason to believe that the remand might lead to a different result").

Although Plaintiff may disagree with the ALJ's analysis of Plaintiff's subjective complaints, such determinations are "'emphatically the province of the ALJ, not the court.'" Vest v. Colvin, No. 5:13CV00067, 2014 WL 4656207, at *2 (W.D. Va. Sept. 16,

2014) (unpublished) (quoting <u>Dunn v. Colvin</u>, 973 F. Supp. 2d 630, 649 (W.D. Va. 2013)). So long as the record provides substantial evidence to support the ALJ's analysis, and the ALJ complies with applicable law, as she did here, the reviewing court should not disturb those findings.

In short, Plaintiff has not shown error with respect to the ALJ's analysis of Plaintiff's subjective complaints and, thus, Plaintiff's second issue on review does not entitle him to relief.

### III. CONCLUSION

Plaintiff has not established an error warranting reversal or remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment Reversing or Modifying the Decision of the Commissioner (Docket Entry 10) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 12) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

April 24, 2018